I'm going to try and reserve five minutes for my rebuttal. Good morning, and may it please the court. I am Jeremy Friedman. With me at council's table is Derek Johnson. It's my honor and privilege to appear on behalf of a later Ray Perry in this case and argue before this court and in this historic courtroom, which is nearly as old as the False Claims Act itself. Lincoln's law was passed in 1863, and this building was constructed in 1869. This case presents several important legal questions under the False Claims Act. This is the first False Claims Act case in the Ninth Circuit to address the National Aid Highway Program falsities in connection with that. Under the highway laws, the contractors submit bills to the state, and the state submits vouchers to the federal government, all under the umbrella of federal regulations and federal agreements. This is the first case in the Ninth Circuit in which the National Aid Highway Program falsifies all federal requirements, all pursuant to the federal statute that the roads be constructed with a mandate for a 20-year- I can just sort of jump to it. Because you get knocked out on 8A and 9B in Twombly and Iqbal. So why don't you provide me with your best example of a specific allegation concerning a particular contract that would meet the Twombly-Iqbal standard? Okay. The district court in this case held that you couldn't use representative examples to establish 9B particularity. The judge said that this case was not amenable to representative examples and it needed to be cookie-cutter fraud. And that we would have to plead with particularity each element of each false claim to come- and this would come from the district court. And we would have to compel relators to file- and government lawyers as well- to file 733 page complaints. If you look at the complaints itself, there are 25 different representative examples. And each- What's your best one? I'm just trying to get you to answer Judge Callahan's question. I'm sorry if I'm not answering it directly. I was trying to precursor it. But the- each one of them is detailed. They talk about- The best one. They lied about the verification tests. They submitted false statements in connection with the- what was and what didn't pass. They were material to the funds. They later ended up having to repave that same section. But how do we- but how- if we- even if we accept that they're subpar roads were built, how do we know from the allegations that the payments to the contractors weren't adjusted to reflect these breaches of contract and shoddy work, as it were? How do we know that? That's a very good question, Your Honor. This is not a case where it's just a claim that there was subpar or substandard material. What happened then is that the contractors lied to ODOT and lied to the project managers about whether or not they passed the tests. So this isn't a case where there would be any sort of government acquiescence. Government acquiescence is simply not a defense in this case. What we have here is the project managers approving payments to the contractors based upon the assumption that the information that they give them is true and correct. Where do you say they lied in paragraph 58? I'm missing that. They- in the fall, they- after- it failed the verification test and defendant knowingly failed to identify the failing areas as required. Instead, the defendants just re-ruled that portion and requested another verification. Under the standards, they have- Let me just make sure I understand what you've alleged here. They didn't pass the test and then requested another test and then they passed the second test? No. The subsequent test showed that that verification had failed also. The defendants knowingly failed to identify the entire area and rework it until it met specifications. So it ultimately met specifications. It did not meet specifications. Is that what it says? And you failed to- you failed to identify it and it refused or- and then it was reworked until it met specifications? They're supposed to rework the entire area, and even when they reworked that one area, it still failed. It still- subsequently, it still showed that it's failed to rework it. And when the relator complained about it, the relator was removed from the project. Now, I think you- here's the ambiguity that I think Judge Silverman is identifying. The sentence that begins, defendant knowingly failed to identify, you would have it say, and it's, I think, a permissible reading of what you wrote, defendant knowingly failed to identify the entire failing area and to rework it until it met specifications. That's right, Your Honor. Did they rework it? Is that what you're trying to get at? They tried to rework it and it didn't- it still didn't work. It still didn't do it. They're supposed to rework the entire area and then show the tests. The most important thing about this case is that the- Let me come back. I now want to follow up on Judge Callahan's questions. I'm willing to assume for the purposes of my question that you have sufficiently alleged that they are falsifying the results of their test, they're not doing it properly, and so on. But Judge Callahan's question went, okay, so that happened. How do we know that a bill was submitted for this and that there was no sort of adjustment and, therefore, in the end, they were paid appropriately for the work they did or didn't do? There-we allege that there were bills submitted for each one of these works, and we allege the dates in which all the submissions were made, the third note dates. And you allege that the bills were paid in full without adjustment? Yes, Your Honor. The bills were paid according to the amount that was listed for the work done. Where is that alleged? That's alleged in the complaint. The appendix itself gives the date. The third note date is when the submission of the documentation. So in the appendix, there's a date in which the contractors are supposed to finish the work and submit all of it. So I'm going to find, for example, from paragraph 58, I'm going to find that the bill was submitted and so on? Yes. Where am I going to find that with respect to the project at South Bend Way and Safety Station? Yes, Your Honor. And we state here that- Where am I going to find it? Oh, in the appendix, the appendix to the complaint lists the third note date, which is when all the contract documents are supposed to be submitted. And we allege in the complaint that there were bills for each one of these and that the government paid the amount. In the third- Let me back up. Where do you allege that the bills were submitted and paid for the particular project? For example, the project listed in paragraph 58. We allege generally that the bills were submitted and paid for all of these contracts. And then in the appendix, it shows the date in which the documents were submitted. That's the third note date. And it also just says the amount of money that was paid. So that's the bills that were paid. Where do you allege that the bills were submitted and paid?  The bill has an appendix that says the bills were paid to date and it has the dollar amounts in the last count, second last count. And this may be too hard for you to do on the fly, and I'm somewhat sympathetic with that. But are you able to do it as you stand there to identify where in these appendices there is a billing notation with respect to the project identified in paragraph 58? Yes. That project would be identified in there and it would be in this appendix. Where? I'm looking at the appendix. It would have to go to the Hooker Creek appendix list, and it would be one of those that was listed on 58. I can't pick it up real quick. Maybe you can. I see in appendix A there's a reference to contract 312876. Is that what you're referring to? Yes. South Bend Way Station. It's South Bend Way and Safety Section. But, Your Honor, the issue here isn't whether or not we've alleged a specific bill that has been submitted. What we need to allege with particularity under Rule 9b is the falsity and fraud. There's four elements under the False Claims Act, false or fraudulent statements, knowledge, materiality, and claim. And Rule 9b requires particularity with respect to the fraud and false statements. Those are the things that we've given representative examples of extensively. Here's my core problem with this. Assuming that the allegations in paragraph 58 are sufficient to allege under Rule 8 and Rule 9 with respect to this project, what you're trying to do is to say, well, I've got a lot of examples of fraud. I'm assuming for the purpose of my question that this one satisfies the pleading allegations, and there may be several others with other specific projects that satisfy the pleading requirements under Rule 9 and Rule 8. But you're trying to characterize this as a case such as we get, for example, for Medicare fraud, where we've got some office that's set up that submits fraudulent bills for $500, $700, because the patients are fictitious or whatever it is. And in those cases, we don't ask for each one of them. We just ask for the pattern. My problem, and I think it's the district judge's problem on this one, is these aren't, in the jargon, cookie cutters. These are the particularities with respect to the project or such that I'm not sure it's sufficient to plead these as examples. And it seems to me that maybe you need to plead each one as fraud, because so many different things can happen with this. It's not just one office where it's a sort of a fraudulent Medicare billing mill. How do you answer that? You know, and I think the issue there goes to a difference between pleading and proof. We're not saying that we're going to prove that these other contracts, where the relator did not have specific particular knowledge about, we're going to prove that they falsified on those contracts because they saw it happen on the other contracts. But a relator, in this case, he was working with ODOT. They only sampled about 10 percent of the work that's being done by the contractors. What he saw was systemic problems, and a systemic consistent problems of these falsification about the character and quality of the materials provided. That's sufficient for Rule 9b to cover whatever work was done. Now, when it comes time for proof, because it's grounded, it grounds the case in particulars. But when it comes to proof, we would have to prove that there was fraud on those contracts. The only thing we're asking on each contract. Do you know that it was the federal government and not ODOT or whatever who paid for these roads? How do we even know that? That's alleged in detail in the complaint. It sets forth the process by which all of the bills are submitted to the state. All of the bills from the state are then submitted to the federal government. The federal government pays 90 percent of all of the bills that are submitted on this. Well, you said the process, but how do we really even know that? So if there's a distinction between whether or not we have to submit, we have to prove that the actual claims being submitted, we have to describe the actual claims versus the process. And under the CAFASO case and IBID case, what's important here is that we allege sufficient indicia that there were claims made and that these claims were paid by the federal government. And that is what is done in this case. It's not necessary for us to list a complaint where we go through a date, before we even have a chance for discovery, a date that every claim was paid and exactly tied to every date in which it was submitted. What's important here is the process. And in this case, they could not get any money unless it was done pursuant to this federal oversight, pursuant to the process by which these bills are paid. That is strong indicia that this was, in fact, paid by the federal government. That's what these are. These are federal highway contractors. And in the cases that we cite in the briefs, and in particular the Compton case from the Sixth Circuit, when someone is contracting with the government and they fail to do their obligations knowingly, that that is a False Claims Act violation. I'd like to reserve the last minute if I can. Thank you. Roberts. I see we have three lawyers representing the appellees. Have you decided how you're going to split up your time? Your Honor, with court permission, I will speak for all of the defendants collectively. If the court has specific questions for specific defendants, each defendant has counsel present, but all defendants have agreed that I will present a collective argument. And you're Mr. Jones? I am. Harlan Jones. Good morning. Good morning. Before I launch into what is my own argument, I'd like to comment on the Court's questions to opposing counsel and opposing counsel's answers, because I think they go to the heart of the case. The problem with the Second Amended Complaint and Example 58 that he offered up is as good an example as any is this. You can tell by reading Paragraph 58 that the plaintiff alleges that bad things were done. You can tell that. And you can infer from the complaint that there was fraud. In a motion of this kind, you should give them the benefit of that inference. But here's what you can't tell, even when you read Paragraph 58 and everything else in the complaint. You can't tell what anybody billed for that work. You can't tell what part of any bill submitted for that work was supposedly fraudulent. And you can't tell whether the bill that was submitted for that work was adjusted to take into account whatever the problems were that the plaintiff describes. You simply cannot, in this complaint, connect those dots. Well, okay, but if he did more discovery, would he be able to connect those dots? Because, I mean, when you dismiss something with prejudice, you're basically saying there's no way you can ever state a claim. Is there a way he could state a claim? In this particular instance, Your Honor, he must start out by pleading with particularity at least something. He's not allowed to say there was fraud. I actually can't show you a bill that was fraudulent, and I can't explain what about that bill was fraudulent, and I can't even explain to you what part of the bill was paid. Let's assume for the moment that everything in paragraph 58 is right. I don't ask you to concede that. But it sounds as though there was cheating, sounds as though there was deliberate falsification of the results of tests. And I think we may infer from what's in the appendix that a bill was submitted. How can he, without discovery, get a copy of the actual bill and the actual payment? Is there any way he can get that? I don't know. Because that's catch-22. There are public records laws, but I would say this. He can't use a Fair Claims Act claim to go look for the evidence to get specificity to plead a fraud claim. Either you have sufficient specificity to plead a fraud claim on the front end or you can't plead. I understand that, but Rule 9 has some sort of practicality to it. You want to be able to the stated purpose of the particularity requirement of Rule 9 is that the defendant know, okay, what is it that I'm being charged with so I can defend myself? And there's a lot here that one of your clients is being charged with that may or may not be true. And I don't know that it's very hard to defend yourself on the ground of, well, okay, I didn't submit a bill. Okay, I didn't submit a bill. So, I'm having trouble figuring out why, for purposes of serving Rule 9, we need to have specific allegations beyond, we have an allegation of an amount that was billed. I mean, that's in the appendix. Was it some pains to make him point it out to me? You know, if you get to say, well, he doesn't have a copy of the check cut by the federal government, and therefore I win, it's going to be really hard to win false claims act cases. I've seen a lot of false claims cases over the years, and I've never seen anybody complaining saying, you know, this is a no good complaint because he doesn't have a copy of the check from the federal government. And that's not what we're saying, Your Honor. What we're saying is he doesn't have a copy of any bill submitted to anybody for anything. Well, I'll say it again, and I'll say it a little more broadly. I've seen a lot of false claims act cases, and I've never seen an objection where they say, well, I don't have a copy of the bill, and I don't have a copy of the check. And that's the defense. That really isn't the defense, Your Honor. Tell me what the defense is, then. You said that isn't the defense. So what is the defense? The defense is that in order to state a claim for fraud with particularity in this context, the plaintiff must allege that there was a submittal of a claim, that the submittal was fraudulent, and that it was paid. This plaintiff alleges that there were submittals and that claims were paid, but he identifies not one single aspect of fraud in any submittal. It could be that if you took every submittal to which he refers to generically and looked at it, what you would see is that every one of those bills has an adjustment on it, because the contract provides for adjustments, as they must in a contract setting. Constructing contracts are fluid, ever-changing situations. Contracts have built-in mechanisms for revising payment, revising schedules, revising materials, revising work. And those get reflected in the payment that ultimately gets paid. Would it be sufficient, then, to satisfy the argument you just made, if there's a paragraph in here that says there were no adjustments made to the bills submitted? It might be, but there isn't. There's nothing even close to that. In fact, the defendant affirmatively alleges... You say it might be. You're hedging a little bit. Well, if he connects it to a specific claim for payment. What the plaintiff does is to allege affirmatively that there are these contract adjustment mechanisms, and affirmatively alleges that as a result of those mechanisms, payments can and do get reduced or eliminated. So if he were to add to the end of paragraph 58, a bill was submitted based upon the first representations about the work that was performed, and the bill was paid without adjustment, would that be enough? It might be enough, Your Honor, for paragraph 58. Specifically, I'm not talking cookie-cutter. I'm not talking generic. I'm just talking 58. It might be enough for paragraph 58. If paragraph 58 read as a whole lets that defendant know what bill was submitted, what part of that bill was fraudulent, and why it was fraudulent, and that no adjustment was made resulting to the defective work, perhaps that's sufficient. But as you pointed out, Your Honor, what we have here is a case in which in a case rooted in fraud, plaintiff attaches to his complaint an appendix that lists 223 projects, or between the complaint and the appendix, identifies 223 projects, talks about less than 10 percent of those projects, and says fraud. He says not one word about 90 percent of the projects about which he complains. I'm quite sympathetic to that, actually, as I think my question to him signaled. I'm interested in a somewhat different question, though, and that is if we should construe the complaint not broadly saying this is cookie-cutter and so all of them come in, but should those parts of the complaint that list specific projects and make allegations with respect to the specific projects, we have specificity as to those, and those may go forward. I think plaintiff is stuck with his allegations. His allegations are stuck with his allegations. Well, his allegation is that this was a part and pattern of a practice by eight contractors on 223 projects over 10 years. Right. And it was a scheme. That's his allegation. He doesn't identify the scheme, and his factual allegations are not consistent with the scheme, but he alleges it was a scheme. He's stuck with that allegation. You see, I'm not sure that I would view him as stuck with that. Assume for the moment, and I understand it's disputed, so I'm not asking any concessions. Assume for the moment that paragraph 58 is sufficient to allege fraud with respect to that project. You're saying we have to read that allegation out of the complaint because he's using it as an example rather than as a freestanding example of fraud upon which he is suing? I think the question before the district court was, does the complaint plead with particular specificity as required, the allegations of the complaint? And the allegations of the complaint point at 223 projects and eight contractors and 10 years. But that's not quite my question. My question is, should part of this complaint be savable? I understand that the district judge looked at this and said, because you've not sufficiently alleged pattern, you're gone. I don't regard the district judge as having said paragraph 58 is no good, so it does not survive independently as an example of fraud. Well, to back up, I'm not sure that even 58 itself stands. I understand you're making that objection. I want to be clear about that. This is a hypothetical discussion. I think there's a lot missing in paragraph 58 if you're a defendant. Apart from 58 and with regard to 90 percent of the projects, we have no idea what we're supposed to be defending against. As to paragraph 58. I'm sorry.  Finish, and then I have a question. As to the 90 percent of the projects otherwise, we have no idea what we're supposed to be defending with, and it has been made abundantly clear in numerous cases that a False Claims Act is not an invitation to make a general allegation and then go fishing for the particularity required to prove the fraud. And in this case, remember, Mr. Perry alleges that he does not know what was in the billings. He says, I've never seen a bill, I've never seen a voucher, I don't know what's in there. Is there a system in place that prevents contractors from falsifying test results in order to avoid price reductions and receive incentive payments? Planeth affirmatively alleges that there are multiple layers of testing on all of these projects and that those procedures result in harsh consequences for contractors whose testing fails, reductions in payment, no payment, orders to tear out the work and replace it at the contractor's expense. He alleges those things. So he alleges a likely scenario under which that work that wasn't very good gets dealt with, but he asks you to infer that because that work was done and it wasn't very good and a bill was sent and it was paid for, that there was fraud. But then he says, but I don't know what was in the bill. I've never seen any of those bills. I've never seen any of those vouchers. I have no idea how the contractors billed ODOT. I have no idea what ODOT sent to the Federal Government. But I know that that asphalt was bad. And I know that it tested bad. And therefore, there's fraud, a fraudulent, a false act claim, which there isn't. There is a failure of performance, and this Court has distinguished in its cases between alleging breach of contract and bad performance under a contract with a false claim. How can the plaintiff get from they didn't do very good work and they billed for it, but I don't know what they billed or how they billed or even what they got paid to saying there was a false claim? You know, you also argue in your brief that it's simply implausible, and therefore it doesn't even satisfy Iqbal. Do you stand by that? Yes. Tell me why. I mean, people do commit fraud. People do commit fraud on highway projects. Why is it implausible that paragraph 58, for example, is not plausible? I think I start with the proposition that it is implausible on its face without saying anything more. Eight construction contractors. No, I'm asking about paragraph 58. Is paragraph 58 implausible? Yes. Because? Because, as plaintiff points out, the system is replete with multiple layers of testing and reporting and quality control. It is not to me feasible that a contractor who is getting paid by ODOT, wants to continue to get paid by ODOT, it may be dependent on work with ODOT, is going to deliberately defraud ODOT. You know, I'm not convinced by that. We see fraud a lot. And there are a lot of frauds committed against companies that have a lot of procedures to test against fraud and so on. So the fact that there are procedures designed to detect fraud is not enough to tell me that this is so implausible that we, under Iqbal, that we have to dismiss. I think, with regard to the allegations collectively, I think it is important to bear in mind what the plaintiff himself alleges. He says, I reported this to my supervisors at ODOT. I reported this to a state legislator. I reported this to the United States Department of Justice. I reported this to the FBI. I reported all of this bad behavior, all this fraud that has been going on for ten years, reported it to all these people. Were they all asleep? Is it plausible that they just all? Well, I ask you, tell me about the mortgage crisis. Was it plausible that all those fancy bankers back there were just engaged in some sort of a shell game that produced a collapse? Well, maybe. Yes, it is. In retrospect, it is quite plausible. But is it plausible that highway contractors in the state of Oregon working for ODOT are going to behave like New York bankers? Well, I think you're just saying, trust me. No. Or trust my client. No, I'm saying it's not plausible. Okay. Thank you. Thank you very much. Friedman, back to you. Let me ask you a question. Mr. Perry says, I'm sorry, Mr. Jones says that Mr. Perry says he doesn't know what's in the bills or what was paid, whether there were adjustments or not. Is that true? Yes, Your Honor. He didn't, well, it's true to the extent that he didn't work in the billing department. So he didn't see the actual bill being submitted. But he does know that bills were submitted on each of these. He alleges that they were submitted and that they were paid. Well, how does he know that the wrong amount was billed? That's the issue here is that what we're saying is wrong is not just the substandard material, which alone states a false client act, but that they lied to the project managers about that substandard material. There can't be an adjustment or a reduction in pay or a reworking order if you're lying about it. These contractors have their own independent obligation to conduct their own quality control. That is independent of whether or not they get away with it. They have to keep their own tests in place. They have to know the quality of the work. And Perry alleges, and it's alleged in great particularity, that they defied that and that they defied it in a way that misled the government from being able to do any of these checks. So the fact that there are these mechanisms out there for adjustments in pay is not a defense in this case. It certainly is not a defense to these particulars. More importantly, it's an affirmative defense. And we can't be required, shouldn't be required to allege facts that preclude an affirmative defense. These defendants know what was and wasn't paid. We allege that it was all paid on it. And we should be entitled to get discovery before we have to address any sort of defense that they're about to raise. I see you're out of time, so unless there are any other questions. Thank you very much. Thank you, Your Honor. Mr. Jones, thank you. The case just argued is submitted.
judges: Silverman, Fletcher, Callahan